UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURELAND PICTURES, INC., | 07-CV-10448 (LAP) |
| Plaintiff, | |
| v. | |
| MEHRET MANDEFRO, M.D., | |
| Defendant. | |

**PURELAND PICTURES, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

Darren Johnson

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

*Attorney for Plaintiff Pureland Pictures, Inc.*

## Table of Contents

**Page**

Preliminary Statement ................................................................................................ 1

Statement of Undisputed Facts .................................................................................. 5

Argument .................................................................................................................... 5

I. Plaintiff Is Entitled to Summary Judgment Under Section 51 Because Dr.
   Mandefro Gave Her Written Permission to Be Filmed and Because *All of
   Us* Concerns a Matter of Public Interest ............................................................. 5

    A.    Section 51 Provides the Only Source of Potential Relief for the
   Alleged Violations of Dr. Mandefro's Right to Privacy ............................ 5

    B.    Dr. Mandefro Gave Her Written Permission to be Filmed,
   Therefore She Cannot State a Claim Under Section 51 and the
   Release Should Be Enforced According to Its Terms ............................... 6

    C.    *All of Us* Concerns a Matter of Public Interest, Placing It Outside
   the Scope of Section 51 ............................................................................ 6

II. Defendant's Unjust Enrichment, Misappropriation and Publicity Claims Are
   Subsumed by Her Section 51 Claim ..................................................................... 8

III. Defendant's Breach of Contract Claim Fails Because It Is Based on Evidence
   of an Alleged Oral Agreement Which Is Barred by Both the Parol
   Evidence Rule and the Statute of Frauds, and Because Dr. Mandefro
   Cannot Demonstrate How the Alleged Breach Caused Her Injury ....................... 8

IV. Defendant's Covenant of Good Faith and Fair Dealing Claim Is Subsumed by
   Her Breach of Contract Claim .......................................................................... 15

V. Defendant's False Advertising Claim Fails To Establish the Requisite
   Elements of the Claim ..................................................................................... 16

VI. Defendant's Claims for Relief Must Be Dismissed Because Defendant Clearly
   and Unequivocally Waived Her Right to Assert Equitable Claims .................... 17

Conclusion ............................................................................................................... 19

Plaintiff Pureland Pictures, Inc. ("Pureland"), pursuant to Federal Rule of Civil Procedure 56, hereby moves for summary judgment, granting Pureland's claim for declaratory judgment as set forth in its Complaint and dismissing Defendant Mehret Mandefro's counterclaims as set forth in her Amended Answer and Counterclaims. For the reasons set forth below, Pureland respectfully requests that summary judgment be awarded in its favor.

## Preliminary Statement

This case concerns a dispute between Pureland, an award-winning film company dedicated to promoting awareness of women's issues, and Dr. Mehret Mandefro ("Dr. Mandefro"), a physician and a subject of Pureland's recently-completed documentary, *All of Us* (the "Film"), which concerns efforts to prevent the spread of HIV among African-American women. Despite executing a written release (the "Release") and allowing Pureland to film her for several years, Dr. Mandefro has attempted to assert creative control over the Film by objecting to certain footage, mostly concerning Dr. Mandefro's personal life.

In 2004, Emily Abt, Pureland's Founder and President, discussed the idea of making a documentary film with Dr. Mandefro about her life and work as a doctor treating HIV-positive women in the South Bronx. From inception, a storyline containing film footage of Dr. Mandefro's personal life was contemplated and agreed upon by the parties. Such footage would serve as a bridge between the experiences of the poor, uneducated and otherwise disenfranchised subjects of the Film and the broader film-watching public. There was a mutual understanding that this footage was critical to illustrating the universality of the issues raised by the HIV/AIDS crisis.

On May 25, 2005, pursuant to standard documentary film-making practices, Pureland and Dr. Mandefro executed a written release agreement, the purpose of which was to ensure Pureland would own all rights to its filming of Dr. Mandefro.  In reliance on this Release, Pureland filmed Dr. Mandefro for over three years.  During that time, in addition to filming the treatment of patients in professional medical settings, Pureland filmed Dr. Mandefro in numerous personal situations.  All filming was done with Dr. Mandefro's knowledge and consent.

On October 22, 2007, after repeated demands to remove several scenes of which she did not approve, Dr. Mandefro sent a purported cease and desist letter to Pureland through counsel.  In response to Dr. Mandefro's objections, Pureland initiated this lawsuit in order to settle its rights.  Dr. Mandefro has responded with counterclaims alleging breach of contract, breach of the covenant of good faith and fair dealing, invasion of right of privacy, invasion of right of publicity, misappropriation, false advertising, and unjust enrichment.

Each of these counterclaims is meritless, and does nothing to alter the unequivocal written Release signed by Dr. Mandefro.

First, Dr. Mandefro's claims for invasion of right of privacy, invasion of right of publicity, misappropriation and unjust enrichment are all meritless because, under New York law, the only conceivable grounds for any such claims would be Section 51 of the New York Civil Rights Laws, which provides the only judicially recognized relief for alleged violations of an individual's right to privacy in New York, and subsumes any possible related claims or defenses.  Section 51 allows "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or

for the purposes of trade without the written consent first obtained [to] maintain an equitable action [and] sue and recover damages for any injuries sustained by reason of such use." That statute has no application here because Pureland did, in fact, obtain Dr. Mandefro's written consent. Section 51 also does not apply because the Film was not made for purposes of "advertising" or "trade," and because its subject matter — preventing the spread of HIV/AIDS — plainly qualifies as matters of public interest that constitute protected speech under the United States Constitution.

Second, Dr. Mandefro's breach of contract claim is equally meritless. Dr. Mandefro seeks to escape the clear and unambiguous written Release between the parties by alleging that Pureland made certain oral promises to her prior to the Release, and that Pureland "reaffirmed" those promises after the Release. Although Pureland vigorously disputes that any such promises were ever made, there is no need for this Court to determine the veracity of Dr. Mandefro's claims since the law makes plain that evidence of prior oral agreements contradicting the terms of a written agreement are barred by the parol evidence rule, and that such evidence cannot be rendered admissible simply by alleging in conclusory terms that the prior oral agreements were "reaffirmed" at a later date. Dr. Mandefro's claim for breach of the covenant of good faith and fair dealing is based on the very same allegations that support her claim for breach of contract, and thus is subject to dismissal for the same reasons.

Third, Dr. Mandefro's claim for false advertising under Section 43(e) of the Lanham Act fails because she cannot meet the threshold requirement of such a claim: that Pureland has made a false or misleading statement with regard to her.

Finally, Dr. Mandefro is not entitled to relief because she cannot establish that she suffered actual damages as a result of Pureland's actions, and she explicitly waived any right to equitable relief upon signing the release.

In sum, Pureland opposes Dr. Mandefro's attempts to escape the unambiguous terms of the Release and to limit its right to speak freely about this important matter of public interest. There is no question of material fact as to these issues. For these reasons, Pureland respectfully requests summary judgment granting Pureland's claim for declaratory relief, and dismissing all of Dr. Mandefro's counterclaims.

**Statement of Undisputed Facts**

Plaintiffs adopt and incorporate by reference the Statement of Undisputed Facts attached herein. All of the material facts germane to this motion are undisputed and supported by the record evidence.

**Argument**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). "Factual disputes that are irrelevant or unnecessary" cannot defeat a motion for summary judgment. *Id.* at 248.

**I.**

**DEFENDANT'S SECTION 51 CLAIM IS MERITLESS BECAUSE
SHE GAVE HER WRITTEN CONSENT TO BE FILMED AND
BECAUSE THE FILM CONCERNS A MATTER OF PUBLIC INTEREST**

Defendant claims that Pureland's use of her name and likeness violates N.Y. Civ. Rights Law § 51. Section 51 allows "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained [to] maintain an equitable action [and] sue and recover damages for any injuries sustained by reason of such use." Defendant cannot prevail under Section 51 because: (a) Pureland obtained Dr. Mandefro's written consent; and (b) the Film was not made for purposes of "advertising" or "trade," and its subject

matter — preventing the spread of HIV/AIDS — plainly qualifies as protected speech under the United States Constitution.

**A.    Defendant Consented in Writing to**
**the Unrestricted Use of Her Likeness**

In order to have an actionable claim under Section 51, the "name, portrait, picture or voice" of an individual must be used without written permission.  in this case, it is undisputed that defendant executed a written Release in May 2005 granting Pureland permission to film her in connection with the film now entitled *All of Us*.  The language of the Release explicitly grants Pureland unlimited rights to "take photographs of [Dr. Mandefro] and record [her] voice" and use this footage "in any manner deemed proper by Pureland Pictures."   The Release does not contain any time limitation on the use, nor does it include any restriction on the manner of the use.

Accordingly, inasmuch as Section 51 explicitly bars an action where there is a written consent, defendant's right of privacy counterclaim must be summarily dismissed.

**B.    The Footage of Defendant Is Used to Illustrate an Issue**
**of Public Interest, Not for Trade or Advertising Purposes**

Beyond defendant's written consent, she also cannot hope to prove that her likeness was used for the purposes of "trade or advertising" as required by Section 51.

New York courts have consistently interpreted Section 51's "advertising" or "purposes of trade" requirement to mean that publications concerning newsworthy events or matters of public interest fall outside the scope of Section 51.  *See Finger* v. *Omni Publications Int'l, Ltd.,* 77 N.Y.2d 138, 142 (NY 1990), *citing Stephano* v. *News Group Publs.,* 64 N.Y.2d 174, 184*; Arrington* v. *New York Times Co.,* 55 N.Y.2d 433, 440 (1982).  The "newsworthy" or "public interest" exception to Section 51 has been

6

interpreted "in most liberal and far-reaching terms." *Myskina*, 386 F. Supp. at 417, *citing De Gregorio* v. *CBS*, 123 Misc. 2d 491, 493 (N.Y. Sup. Ct. 1984). Whether a publication is newsworthy in this context is a question of law to be decided by the court. *See Freihofer* v. *Hearst Corp.*, 65 N.Y.2d 135, 140-41 (N.Y. 1985).

This Court recently addressed the question of newsworthiness in *Lemerond* v. *Twentieth Century Fox Film Corp.* No. 07 Civ. 4635 (S.D.N.Y. Mar. 31, 2008). In that case, the Court found that the film *BORAT – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (*"Borat"*) was an "ironic commentary of 'modern' American culture" and fit squarely within Section 51's newsworthiness exception. *Id.*

There can be no question that if a narrative comedic feature such as *Borat* is newsworthy under the Civil Rights laws, then *All of Us*, a documentary film which confronts the pressing public health issues inherent in the spread of HIV/AIDS, must also be considered newsworthy. *See also Weil* v. *Johnson*, No. 119431/02, 2002 WL 31972157, *4-5 (Sup. Ct. N.Y. Co. Sept 27, 2002) (documentary concerning children from wealthy families a matter of public interest); *Delan by Delan* v. *CBS, Inc.*, 91 A.D.2d 255, 259 (N.Y.A.D. 1983) (documentary concerning deinstitutionalization and placement of mental patients a matter of public interest); *Finger*, 77 N.Y.2d at 144 (magazine article concerning *in vitro* fertilization rates newsworthy). To hold otherwise would rob the newsworthy exception of its meaning altogether.

While there is some hope that Pureland may one day make a profit from the distribution of the Film, that mere fact does not bring defendant's claim within the ambit of the trade or advertising prong of Section 51. *See Myskina*, 386 F. Supp. at 418.

Because the Film's use of defendant's likeness was not used for the purposes of "trade or advertising" under Section 51, her right of privacy claim must be summarily dismissed.

## II.

### DEFENDANT'S RIGHT OF PUBLICITY, MISAPPROPRIATION AND UNJUST ENRICHMENT CLAIMS ARE SUBSUMED BY HER <u>SECTION 51 CLAIM, AND THEREFORE SHOULD BE DISMISSED</u>

It is well-established that Section 51 provides the only judicially recognized relief for alleged civil violations of an individual's right to privacy in this state. *See Lemerond*, No. 07 Civ. 4635 at 8; *Myskina*, 386 F. Supp. at 420. Thus, Section 51 preempts any common law privacy or publicity cause of action, and subsumes any common law misappropriation and unjust enrichment claims arising out of an alleged violation of the right to privacy. *Id.*.

Accordingly, defendant's unjust enrichment, misappropriation and publicity counterclaims are subsumed by her privacy claim, and necessarily fail for the same reasons.

## III.

### DEFENDANT'S BREACH OF CONTRACT CLAIM IS BARRED BY THE PAROL EVIDENCE RULE AND THE STATUTE OF FRAUDS, <u>AND BY DEFENDANT'S FAILURE TO ALLEGE ANY ACTIONABLE INJURY</u>

A.    <u>Defendant Claim is Barred by the Parole Evidence Rule and the Statute of Frauds</u>

In a desperate attempt to avoid the clear and unambiguous terms of her written Release, defendant alleges the existence of certain oral agreements made prior to the Release. While Pureland vigorously disputes the existence of any such oral

agreements, the point is moot since any such agreements are plainly barred by the parol evidence rule.

The oral agreements alleged by defendant concern issues directly covered by — and contradicted by — the Release. For example, the written Release clearly states that Pureland may use defendant's likenesses "in any manner," whereas the alleged oral agreement conveys a "limited license" conditioned on Pureland's agreement that "the Film would not be displayed, distributed, or viewed in any public forum without Dr. Mandefro's express approval." Because the alleged prior oral agreement cannot be reconciled with the unambiguous terms of the Release, the Oral agreement is barred by the parol evidence rule. *See Myskina*, 386 F. Supp. 2d at 415.

The decision in *Myskina* is instructive here. In that case, the professional tennis player Anastasia Myskina sued a magazine and its publisher for distributing nude photographs of Myskina that were eventually published in a foreign magazine. Prior to being photographed, Myskina signed a standard release form that did not contain a merger or integration clause. Challenging the release, Myskina alleged that she had made an oral agreement while being photographed limiting the publisher's right to distribute the photographs. The Court granted summary judgment in favor of the publisher on its breach of contract claim, ruling that the alleged oral agreement was barred by the parol evidence rule. Observing that the release was unambiguous on its face, that it addressed a straightforward transaction, that it did not mention the alleged oral agreement, and that it was written in a comprehensive manner indicating an intent to be bound only by the terms of the release, the Court found the release to be an integrated agreement even in the absence of an express merger or integration clause. The court further noted that the

alleged oral agreement concerned a fundamental condition to Myskina's consent that contradicted the plain language of the release, that such agreement would have been expected to be memorialized in writing, and held that evidence of the alleged agreement was barred by the parol evidence rule. *Id.* at 18-19.

This case is no different and merits the same result. Here, as in *Myskina*, the Release is unambiguous and addresses a straightforward transaction in comprehensive terms, indicating that the parties intended to be bound only by those terms. The oral agreement alleged by Dr. Mandefro is mentioned nowhere in the Release, despite the fact that it contains contradictory terms on the same subject matter. Moreover, as in *Myskina*, the alleged oral agreement contains such detailed, sweeping and one-sided terms that one would reasonably expect that, should the parties make such an agreement, it would be reduced to writing. For these reasons, just as in *Myskina*, defendant's alleged oral agreement is barred by the parol evidence rule.

Defendant also alleges, in purely conclusory terms, that the purported oral agreement prior to the Release was somehow "reaffirmed" after the signing of the Release. These vague and conclusory allegations, which are nothing more than a transparent attempt to avoid the preclusive effect of the parol evidence rule, also must fail.

First, the mere "reaffirmation" of a previously-barred oral agreement does not create a separate and distinct contract sufficient to avoid application of the parol evidence rule. *See Acquisition Corp. of America* v. *FDIC*, 760 F.Supp. 1558 (S.D.Fla. 1991) (granting summary judgment against party orally reaffirming contemporaneous oral agreement after execution of written contract). Defendant's allegations explicitly

10

acknowledge that these purported subsequent oral agreements were not new contracts, but simply a reaffirmation of the earlier alleged oral agreement ("The 2004 agreement was reiterated and reaffirmed in 2006 and in 2007."). Defendant cannot revive a barred oral agreement simply by alleging in conclusory terms that the agreement was "reaffirmed" after the Release was executed. To hold otherwise would effectively eviscerate the parol evidence rule.

Second, Even if defendant's conclusory allegations did amount to a separate and distinct contract not barred by the parol evidence rule, that oral agreement would still be precluded by the Statute of Frauds. Under New York law, an oral contract is void "unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement, promise or undertaking by its terms is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. § 5-701(1). Because the oral agreements alleged by defendant are in the nature of continuing, ongoing obligations that cannot be fully performed or terminated within one year, they are void and unenforceable. *See Ehrlich* v. *Diggs*, 169 F. Supp. 2d 124, 130 (E.D.N.Y. 2001) ("The key issue in determining the applicability of New York's Statute of Frauds is whether the defendant can unilaterally terminate the contract, discharging all promises made.").

The decision in *Ehrlich* is instructive. In that case, a recording artist entered into an oral agreement with his manager, entitling the manager to a percentage of the artist's earnings as long as he continued to serve as manager. The court noted that "[t]he earnings in which plaintiff has an interest may continue indefinitely, as recordings and other musical works sold to third parties will generate earnings far into the future."

*Id.* at 130-31. The court noted that, even if the manager had decided to quit within a year, the artist would still be obligated to pay his former manager indefinitely from income generated by his recordings in the future. Given the indefinite time period of the obligations at issue, the court found that the New York Statute of Frauds invalidated the oral agreement. *See also Montgomery* v. *Futuristic Foods, Inc.*, 66 A.D.2d 64, 66 (N.Y. App. Div. 1978) (oral agreement restricting defendant from *ever* selling cassette tapes provided by plaintiff unenforceable under the Statute of Frauds).

Here, it is not simply the initial screening or distribution of the Film that is at issue, but the ongoing use of defendant's likeness throughout the lifetime of the Film, a period that is necessarily indefinite (if not infinite). Thus, even if Pureland were able to finalize a cut of the film within one year, it would remain obligated to secure defendant's "express approval" for any and all subsequent modifications of the Film, such as when it is ultimately shown on television, distributed on DVD, and repackaged in future mediums that are presently unknown. This obligation extends indefinitely by its very nature, and cannot possibly be fully satisfied within one year. The agreement therefore violates the Stature of Frauds and is unenforceable.

Third, regardless of their legal merits, the alleged subsequent oral agreements are entirely unsupported by the record evidence in this case. Parties claiming oral modifications of a written contract have the burden to prove them, and courts routinely reject attempts to evade the parol evidence rule merely by alleging modifications that are otherwise unsupported by the record. *See Rooney* v. *Slomowitz,* 11 A.D.3d 864 (NYAD 3 2004) (granting summary judgment against party conclusorily alleging oral modification); *Regent Partners Inc.* v. *Parr Development Co., Inc.*, 960

F.Supp. 607 (E.D.N.Y. 1997) (granting summary judgment against party where allegation of oral modification that was unsupported by record); *Dombrowski* v. *Somers,* 41 N.Y.2d 858, 393 N.Y.S.2d 706, 362 N.E.2d 257 (1977) (granting summary judgment against party where allegation of oral modification that was unsupported by record); *see e.g. Kleinberg,* 240 F. Supp. 2d 260, *citing George Backer Mgt. Corp.* v. *Acme Quilting Co.,* 46 N.Y.2d 211, 219 (1978) ("In order for defendant to reform the contract, it must overcome the 'heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' by showing in 'no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties.'").

Here, as documented in Pureland's Statement of Undisputed Facts, Dr. Mandefro was repeatedly asked by Pureland, in email correspondence dating from February 2005 through February 2007, to make herself available for filming in personal, possibly romantic situations.  The record shows that Dr. Mandefro assented to these requests without objection.  Additionally, between September 2004 and January 2007, Pureland filmed more than twenty-three hours of footage concerning Dr. Mandefro's personal and/or romantic life.  It is undisputed that Dr. Mandefro consented to this filming.  The sheer quantity of this footage, coupled with the numerous exchanges with Pureland for greater access to Dr. Mandefro's personal life, all demonstrate that Dr. Mandefro was aware of and agreed to the personal storyline contemplated by Pureland.  Perhaps most telling, Dr. Mandefro never once mentioned or referred to, in her extensive correspondence with Pureland extending over three years, the alleged oral agreements

now raised in her counterclaims.  Thus, the existence of Dr. Mandefro's alleged oral

agreement is entirely inconsistent with the record in this case.

**B.**      **Defendant Has Failed to Allege Any Actionable Injury**

Actual injury is a required element of any breach of contract claim.  *See*

*Shafran* v. *Harley-Davidson, Inc.,* No. 07 Civ. 01365, 2008 WL 763177 (S.D.N.Y. Mar.

20, 2008), *citing Gordon* v. *Dino De Laurentiis Corp.,* 141 A.D.2d 435, 435-36 (1st Dep't

1988).  "In the absence of any allegations of fact showing damage, mere allegations of

breach of contract are not sufficient to sustain a complaint, and the pleadings must set

forth facts showing the damage upon which the action is based." *Gordon*, 141 A.D.2d at

436.  Here, defendant simply alleges that she "has been injured in an amount to be

determined."  These boilerplate allegations are insufficient to establish a breach of

contract claim.  Because defendant does not, and indeed cannot, establish that she has

suffered actual injury, her breach of contract claim must fail.

Defendant's alleged injury to her "standing in the medical community and

to her personal reputation" is, at most, purely speculative.  Indeed, the Film presents a

highly positive picture of defendant, highlighting her intelligence and earnest

commitment to the cause of HIV/AIDS, while presenting her very human vulnerabilities

in a sympathetic manner.  Pureland has no possible motivation to present defendant in a

negative light, as to do so would impede the audience from identifying with defendant,

undermining the film's message of universality.

In support of her claim, defendant makes no concrete allegations as to how

her alleged injury has manifested itself, nor could she do so.  It strains credulity to believe

that the fleeting personal references in the Film would cause anything but minor

embarrassment to Dr. Mandefro, which is not compensable.  Because she has not

established any actionable injury, nor offered facts from which any such injury could be inferred, Dr. Mandefro's breach of contract claim must fail.

## IV.

### DEFENDANT'S COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS SUBSUMED BY HER BREACH OF CONTRACT CLAIM, AND THEREFORE SHOULD BE DISMISSED

A breach of the implied covenant of good faith "is merely a breach of the underlying contract," meaning, as a matter of law, that such claims are irrelevant to recovery unless they are based on conduct different from the conduct constituting the alleged breach of contract. *Fasolino Foods Co.* v. *Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992); *Pearce* v. *Manhattan Ensemble Theater, Inc.*, 528 F.Supp. 175, 180-81 (S.D.N.Y. 2007). In other words, "such a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." *Sauer v. Xerox Corp.,* 95 F.Supp.2d 125, 132 (W.D.N.Y. 2000).

Defendant's claim for breach of the covenant of good faith and fair dealing does not take even the first step toward stating such a claim. Rather than identify how Pureland purportedly breached an implied covenant, defendant merely repeats her breach of contract allegations. (Amended Answer ¶ 81.) As such, defendant's purported claim for breach of the covenant of good faith and fair dealing is subject to dismissal for the same reasons.

**V.**

## DEFENDANT'S FALSE ADVERTISING CLAIM FAILS IN THAT IT CANNOT ESTABLISH THE THRESHOLD REQUIREMENT OF THE CLAIM: FALSITY

Defendant also alleges that Pureland's "false and/or misleading use" of her likenesses violates Section 43(a) of the Lanham Act. She further alleges that Pureland had made "numerous false statements regarding the nature of [her] research." Defendant's false advertising claim suffers from numerous infirmities, the most glaring of which failure is her inability to establish the threshold requirement under the statute: falsity.

In order to establish a false advertising claim pursuant to Section 43(a), it must be established that the challenged message is false. *See Lipton* v. *The Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). Falsity is established by proving a message is literally false as a factual matter, or, although the message is literally true, it is likely to confuse or deceive consumers. *See id.* "Subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Id.* "In order for a statement to be actionable, it must contain 'specific assertions of unfavorable facts reflecting on the rival product.'" *Groden* v. *Random House, Inc.,* No. 94 Civ. 1074, 1994 WL 455555, at *5 (S.D.N.Y. Aug. 23, 1994), *quoting American Express Travel Related Services Co., Inc.* v. *Mastercard International, Inc.,* 776 F.Supp. 787, 792 (S.D.N.Y. 1991).

Defendant has alleged absolutely no facts establishing that false or misleading statements were made by Pureland. Nor could she, considering that all of the purportedly objectionable statements concerning Dr. Mandefro in the Film come from defendant herself.

16

Defendant also alleges, in vague and conclusory terms, that her research has been misrepresented and distorted. These vague and conclusory allegations cannot possibly establish a false advertising claim. "Where the alleged misrepresentation is 'essentially a matter of argument, . . . the [consumer] to whom the argument [is] addressed [is] free to make up his own mind as to its validity.'" [*Id.*] (*quoting Glenn* v. *Advertising Publications, Inc.,* 251 F.Supp. 889, 904 (S.D.N.Y.1966)). This concept is particularly important here, where defendant's allegations are directly contrary to Pureland's First Amendment rights. *See Rogers* v. *Grimaldi*, 695 F. Supp. 112, 120-21 (S.D.N.Y. 1988) ("[B]efore expression through film can be curtailed by the Lanham Act, the party seeking relief bears [a] heavy burden. . . . Having determined that the speech in question is artistic expression . . . the prohibitions of the Lanham Act do not apply, and the Film is entitled to the full scope of the protection under the First Amendment.").

Thus, defendant's claim for false advertising must also be summarily dismissed.

## VI.

### DEFENDANT'S CLAIMS MUST BE DISMISSED BECAUSE SHE CLEARLY AND UNEQUIVOCALLY WAIVED HER RIGHT TO ASSERT EQUITABLE CLAIMS

As discussed above, defendant has failed to allege that she has suffered any actionable injury. For this reason, she has no viable remedy at law. Defendant also has no right to equitable relief, as any rights to such relief were unequivocally waived when she signed the Release, which states as follows:

> "I expressly waive any and all equitable rights I may have hereunder, including but not limited to any right to enjoin, rescind, terminate or otherwise interfere with the production, distribution and/or exploitation of [*All of Us*] or any other productions based therein in whole or in part."

17

Such contract terms are valid and have been upheld by courts.  *See Sontag v. Cook*, 2005 N.Y. Misc. LEXIS 3256, *20-21 (N.Y. Sup. Ct. 2005).  Thus, even if the Court were to find that certain portions of the Release somehow were modified by Dr. Mandefro's alleged oral agreements, those agreements do nothing to alter the clear and unambiguous terms of this waiver, which remains intact.  *See U.S.* v. *J. Kokolakis Contracting, Inc.*, 2007 WL 1771561 (S.D.N.Y. 2007) ("It is axiomatic that '[t]he modification of a contract results in the establishment of a new agreement between the parties which pro tanto supplants the affected provisions of the original agreement while leaving the balance of it intact[.]'") (*quoting Beacon Terminal Corp.* v. *Chemprene, Inc.*, 75 A.D.2d 350, 354 (2d Dep't 1980)).

Thus, because Dr. Mandefro has not alleged any actionable injury, and has expressly waived her right to any equitable relief, all of her claims must be summarily dismissed.

## **Conclusion**

For all the foregoing reasons, Pureland respectfully requests that the Court

grant its motion for summary judgment and dismiss defendant's counterclaims.

Dated: April 7, 2008
         New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:_____/s/ Darren W. Johnson_____
         Darren W. Johnson

1285 Avenue of the Americas
New York, New York  10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Plaintiff Pureland Pictures, Inc.*